CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 3 2021

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| NICOLE S., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-368 |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on August 3, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Nicole S. ("Nicole") has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Nicole filed an application for Supplemental Security Income (SSI) on February 4, 2013, alleging an onset date of September 15, 2004. R. 305, 316. She later filed a second application for SSI with an alleged onset date of May 24, 2017. Nicole was 32 years old as of that date. She alleged disability based on paraxomal supra ventricular tachycardia, anxiety, panic attacks, depression, irritable bowel syndrome, asthma, and a thyroid condition. Nicole's

claim progressed through the administrative process and was denied at all levels of review. She filed an appeal of the denial in federal court, and her case was remanded to the Social Security Administration for additional consideration. <u>Smith-Lumsden v. Berryhill</u>, No. 7:17-cv-256 (W.D. Va. Sept. 6, 2018). On remand, the Appeals Council vacated the prior decision of the Commissioner and sent the case back to the administrative law judge (ALJ) with instructions to proceed consistent with the court's remand order and to consolidate the claim with her new SSI claim filed on May 24, 2017. R. 735-36.

A second ALJ hearing was held on December 17, 2019. Nicole appeared with counsel and a vocational expert (VE) testified. Following the hearing, the ALJ found that Nicole had severe impairments of asthma, supraventricular tachycardia, panic and anxiety disorders, cervical degenerative disc disease, right clubfoot and arthritis, and obesity, but that none of the listed impairments met or equaled a listed impairment. The ALJ found that Nicole had the residual functional capacity (RFC) to perform light work with additional limitations of occasionally climbing ramps and stairs, balancing, kneeling, crawling, stooping, crouching, and reaching overhead; avoiding even moderate exposure to extreme temperatures, excess humidity, and pulmonary irritants; avoiding all exposure to hazardous machinery; no working at unprotected heights, climbing ladders, ropes, or scaffolds, or working on vibrating surfaces. The ALJ further found that Nicole could understand, remember, and carry out instructions in repetitive, unskilled work; could attend, persist, and concentrate for two-hour segments with normal breaks as allowed by the employer; could complete a normal 40-hour workweek as long as she had no interactions with the general public and only occasional interactions with co-workers and supervisors; and could respond appropriately to supervision, co-workers, and

2

usual work situations. She could not work at a job with excessively loud background noise such as heavy traffic or jackhammering type construction equipment in the immediate work environment. The ALJ found that Nicole might be off task up to five minutes per hour, which could be accommodated during normal breaks, and that she might miss up to one day per month because of her medically determinable impairments and symptoms. The ALJ found that Nicole could not perform any of her past relevant work as a fast-food worker, customer service representative, cashier, housekeeper, waitress, or telemarketer. Based on the testimony of the VE, the ALJ found that Nicole could do the work of a marker, garment sorter, or folding machine operator. The ALJ concluded that there was work in the economy for Nicole and therefore she was not disabled. R. 644-668. The Appeals Council denied Nicole's request for review, R. 1-6, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Nicole has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the

4

plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Nicole objects to the following findings by the magistrate judge: (1) the ALJ correctly gave only limited weight to the opinion of physician assistant Sarah Rodes; (2) the ALJ correctly gave only some weight to the opinion of Jeffery Luckett, PhD; (3) the ALJ properly considered Nicole's mental impairments under SSR 96-8p and found her case distinguishable from Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015); (4) the ALJ properly explained how her RFC findings accommodated plaintiff's moderate limitation in interacting with others; (5) the ALJ opinion included the narrative discussion required by SSR 96-8p and contained sufficient information to allow meaningful review; (6) the ALJ properly considered Nicole's subjective complaints of pain; and (7) Nicole did not identify any subjective complaints the ALJ failed to consider.

## V. Analysis

### A. Weight Given to Medical Opinions

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 F. App'x. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as

---

[2] Detailed facts about Nicole's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 24) and in the administrative transcript (ECF No. 10) and will not be repeated here except as necessary to address her objections.

the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[3] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 F. App'x. at 398; 20 C.F.R. § 404.1527(c). "An ALJ must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" Woods, 888 F.3d at 695 (citing Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2018)). An ALJ may give greater weight to the opinions of nontreating and nonexamining sources if the opinion provides "sufficient indicia of supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter in the opinion." Id.

---

[3] The Social Security Administration has amended the treating source rule effective March 27, 2017, for claims filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 416.920c. Nicole's first claim was filed prior to March 27, 2017, but her second claim was filed after that date and the claims were consolidated. Because Nicole cites to 20 C.F.R. § 416.927 in her Objections to the R&R, the court will examine her objection in the context of that regulation.

### (1) Physician Assistant Sarah Rodes

Sarah Rodes, a physician assistant,[4] began treating Nicole for generalized anxiety, a mood disorder, and obsessive-compulsive disorder in October 2016 and saw her approximately every two or three months. R. 2110. On November 26, 2019, Ms. Rodes completed a check-the-box form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)." R. 2374-2378. Ms. Rodes checked boxes showing that when doing unskilled work, Nicole would have moderate difficulty maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; dealing with normal work stress; and interacting appropriately with the general public. "Moderate" was defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Ms. Rodes stated that she could not accurately assess whether Nicole had limitations in the abilities and aptitudes needed to do semiskilled and skilled work. Ms. Rodes commented that Nicole's work attendance was likely to be impaired due to panic attacks and her ability to interact with the public might be impaired due to anxiety and panic.

The ALJ gave the opinion limited weight overall, and the magistrate judge found that the ALJ properly considered the factors and record when she did so. Nicole objects that the

---

[4] At the time Nicole filed her application for SSI, the regulations required that the sources who could provide evidence to establish an impairment included licensed physicians and other health care professionals but excluded nurse practitioners and physician assistants. 20 C.F.R. § 416.913(a); SSR 06-3p, 2006 WL 2329939, at *2 (S.S.A. 2006). Evidence from "other sources" such as physician assistants, could be used to show the severity of the individual's impairments and how they affect an individual's ability to function. Id. The regulations have since changed, and for cases filed after March 27, 2017, information from "medical sources" about diagnoses may be considered as part of the evidence presented to establish disability. "Medical sources" are no longer limited to licensed physicians. 20 C.F.R. § 416.913(a) (eff. March 28, 2017). In this case, Ms. Rodes' opinion addressed the severity of Nicole's impairments and how they affected her ability to function and the ALJ properly considered her opinion in accordance with the regulations in effect when she filed her first application.

ALJ ignored evidence in the record that supported Ms. Rodes' assessment. In discounting the assessment, the ALJ noted that the record does not indicate frequent, intense panic attacks in which Nicole is unable to function and Ms. Rodes never saw Nicole having a panic attack. Rather, Nicole mainly reported difficulty with social interactions and riding in the car. The ALJ found that the record therefore did not indicate that Nicole would have significant difficulty, given the social interaction limitations in the RFC. The ALJ also found that Ms. Rodes' opinion that Nicole would have moderate difficulty dealing with the normal work stress of unskilled work was inconsistent with her comment that she could not assess Nicole's ability to deal with the stress of semiskilled and skilled work, which would be more demanding. The ALJ agreed that the record showed that Nicole would have difficulty dealing with the public but found the record did not indicate that she would suffer significant absenteeism. R. 664.

Nicole objects that Ms. Rodes' opinion was based not only on her reports of panic attacks but also on Nicole's anxiety disorder and Ms. Rodes' treatment records, which showed continued general anxiety, irritability, anxiety with social interaction, and stress intolerance. However, when asked to explain why Nicole would have the moderate difficulties noted, Ms. Rodes attributed the difficulties to "panic attacks" and "anxiety/panic," rather than the other conditions cited by Nicole. Nicole is asking the court to read into Ms. Rodes' report facts and findings that she did not include, and the court is not free to do so. The ALJ was correct that although Ms. Rodes opined that Nicole's ability to work would be affected by "panic attacks" and "anxiety/panic," her opinion is not supported by her treatment notes. Thus, the ALJ's conclusion that the record does not support a finding that Nicole suffers from disabling panic attacks is supported by substantial evidence.

The ALJ also found that although the record indicates that Nicole has difficulty dealing with the public, the record did not support Ms. Rodes' finding that Nicole was likely to be absent more than three days per month, because while the treatment records showed a few visits to Ms. Rodes that might have been due to anxiety, her complaints of anxiety were not otherwise supported by objective findings. The ALJ pointed out Nicole said she attended court proceedings and did not describe fear about having to do that. She was not described as overly anxious when meeting with the psychiatric consultative examiner or her health care providers, including random providers in the emergency room. She reported difficulty going to the grocery store but was able to do it. R. 663.

Nicole objects that the activities in which she has engaged are not performed on a sustained basis, but are done intermittently and at her discretion, such that she can stop when necessary. The court notes that court appearances are rarely discretionary and further notes that Nicole has made many visits to the emergency room over the years and has not complained about dealing with the public in that context. The point of the ALJ's finding is that Nicole engages in a variety of activities involving interactions with the public and has not reported to Ms. Rodes that they have caused her undue stress. Nicole cites to nothing in the record that suggests otherwise.

Finally, Nicole objects to the magistrate judge's comment that by pointing to contradictory statements in the medical records, she was asking the court to reweigh the evidence. Nicole asserts that she is not asking the court to reweigh the evidence but is only pointing out contradictory evidence that the ALJ failed to acknowledge as required by the Social Security regulations. However, it is well established than an ALJ need not cite every

piece of evidence in the record. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (2014). In addition, disagreement with the ALJ's evaluation of the evidence in the record, or the fact that the evidence may support an opposite conclusion, is not grounds for reversal. Mary R. v. Saul, No. 3:19cv903, 2021 WL 388463, at *7 (E.D. Va. Jan. 19, 2021) (citing Dunn v. Colvin, 607 F. App'x 264, 274 (4th Cir. 2015)). The ALJ in this case adequately explained why she gave limited weight to Dr. Rodes' assessment of Nicole's limitations and Nicole's objection to the finding by the magistrate judge is **OVERRULED.**[5]

### (2) Jeffrey Luckett, PhD

On August 5, 2019, Dr. Luckett performed a consultative mental status examination on Nicole. He diagnosed her with an unspecified depressive disorder, mild to light moderate in intensity; social anxiety disorder; panic disorder; mild agoraphobia, and persistent mild somatic symptom disorder with predominant pain. R. 2340. He added the following:

> In regards to employment, from a strictly psychological standpoint, [Nicole] could be gainfully employed on at least a half to three-quarter time basis. She would not do well working with the general public due to her social anxiety concerns, but would be able to work with peers and supervisors appropriately if treated in a thoughtful and respectful manner. She would be able to perform simple and repetitive tasks as well as some tasks of more difficulty and complexity. She would be able to deal with the typical stressors involved in competitive work.

R. 2340. On a form, he checked that Nicole had a marked limitation in her ability to interact appropriately with the public and a moderate limitation in her ability to interact appropriately

---

[5] In addition, Nicole objects to the magistrate judge's determination that the ALJ properly gave Ms. Rodes' opinion only limited weight because the opinion was not based on cognitive functioning testing and because Nicole could perform activities of daily living. However, Nicole did not elaborate on this objection and the court agrees with the magistrate judge's assessment.

with coworkers and respond appropriately to usual work situations and changes in a routine setting. R. 2342-43.

The ALJ gave the opinion "some" weight. She found that because Dr. Luckett did not observe Nicole to be anxious in the evaluation, his limitations on social interaction were based on her reports to him. The ALJ also noted that the record showed that Nicole did not have difficulty dealing with health care providers, although there was evidence in the record that she had substantial difficulty dealing with the general public. The magistrate judge concluded that the ALJ properly assessed Dr. Luckett's opinion and that her assessment was supported by substantial evidence.

Nicole objects that "the ALJ never specifically refuted Dr. Luckett's opinion that [Nicole] cannot engage in full time work." Objs., ECF No. 25 at 3. However, Dr. Luckett did not find that she cannot engage in full time work. Rather, he found that she could <u>at least</u> work half or three-quarter time, R. 2340, indicating that he did not rule out that she could also work full time. Dr. Luckett commented that Nicole's social anxiety concerns would impact her interactions with the general public. R. 2343. The ALJ credited his assessment when she limited Nicole to jobs with no interactions with the general public and only occasional interactions with co-workers and supervisors.

Nicole also points out that she stated that going to the doctor or grocery store causes her increased anxiety and that she does not like to do those things. However, she does attend appointments and go to the grocery store despite her anxiety. Nicole objects that if she had testified that she was unable to attend doctor's appointments because of anxiety, "the ALJ would have held that against her for non-compliance with treatment and consequently, the

ALJ is holding plaintiff to an impossible and impermissible standard." Objs., ECF No. 25 at 3. Similarly, Nicole objects to the ALJ's finding that she did not appear highly upset when involved in a legal dispute over child custody. She argues that if Nicole had focused on her custody case at her provider visits, the ALJ would have concluded that she was experiencing only a temporary exacerbation of her symptoms based on a temporary event. Id. at 4.

Rather than speculating about how the ALJ might have treated hypothetical statements by Nicole, the court instead will focus on the evidence before the ALJ. The record shows that while Nicole has anxiety, she is able to do things such as go to doctor visits and the grocery store, attend to legal proceedings, and has made multiple trips to the emergency room. The ALJ correctly cited the record in deciding to give Dr. Luckett's opinion "some" weight. Nicole's objections to the contrary are without merit and **OVERRULED**.

### B. Consideration of Mental Impairments

Nicole's third and fourth objections are analyzed together. Nicole objects to the findings by the magistrate judge that the ALJ properly considered her mental impairments under SSR 98-8p and that her case is distinguishable from Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Nicole also objects that the ALJ failed to explain how the RFC accommodates her moderate limitation in interacting with others.

The RFC assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[6] or meets a listing for a mental impairment at Step 3 of the sequential

---

[6] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or

evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

At Step 4, the adjudicator should consider the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, the need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7. In Mascio, the Fourth Circuit remanded a case where the ALJ failed to assess a claimant's capacity to perform relevant

---

medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

functions and failed to analyze the claimant's ability to perform the functions for a full day. Mascio, 780 F.3d at 632.

The ALJ in this case first looked at whether Nicole had an impairment that met or equaled a listed impairment and did so by examining the "B" and "C" criteria set out in the listings. R. 648-650. The ALJ found that Nicole had a moderate limitation in her ability to interact with others and to concentrate, persist, or maintain pace. Id. 649-650. When a claimant has a moderate limitation, it means that the person has a fair ability to function independently, appropriately, and effectively, on a sustained basis, in the area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2).

In doing the RFC assessment at Step 4, the ALJ summarized Nicole's subjective complaints and reviewed the medical evidence in the record and the opinion of the state agency consultant. The ALJ found that limiting Nicole to occasional interaction with coworkers and supervisors would accommodate her social anxiety and found that limiting her to repetitive, unskilled work would address limitations in her ability to concentrate based on her social interaction limitations. R. 663. The ALJ also referred to the RFC when she found that limiting Nicole to jobs with no interaction with the public would further accommodate her social anxiety. R. 649.

The magistrate judge pointed out that after Mascio, the Fourth Circuit in Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020), made clear that an ALJ need not always include moderate limitations in concentration, persistence, and pace in the RFC and that limiting a claimant to unskilled work accounts for such limitations when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite

16

[these] limitations." Id. The magistrate judge found that the ALJ had adequately supported her finding that Nicole could sustain repetitive, unskilled work over a normal workday because she summarized the medical record, allowed for Nicole's testimony about anxiety and difficulty concentrating by including five minutes of time being off task every hour, discussed Ms. Rodes' and Dr. Luckett's opinions and explained why she gave them little and some weight respectively, and gave some weight to the state agency doctors who found that Nicole's mental health conditions were non-severe. Finally, the ALJ found that Nicole's activities of babysitting and caregiving demonstrated some basic concentration, persistence, and pace ability.

Nicole objects that the ALJ failed to properly consider the opinions of Ms. Rodes and Dr. Luckett, but as discussed above, the ALJ adequately explained the weight she gave to each opinion. Nicole also objects that it was error for the ALJ to point to activities such as babysitting and caregiving as evidence that she has an ability to concentrate, persist, and maintain pace because she performed these activities intermittently or with help from her husband and daughter. R. 186-189. However, the ALJ relied on these activities to find that Nicole had "basic concentration, persistence, and pace ability," and then limited her to repetitive unskilled work which would allow her to maintain concentration and thus maintain persistence and pace. R. 650 (emphasis added). The ALJ's assessment is consistent with Shinaberry in that the ALJ assessed the difficulties Nicole has with social interactions and maintaining concentration, persistence, and pace and explained how the RFC accommodated her limitations.

Regarding Nicole's objection that the ALJ failed to explain how the RFC accommodates her moderate limitation in interacting with others, the ALJ explained the following:

> The residual functional capacity prohibition on public interaction and limitation to occasional interaction with co-workers and supervisors accommodates her social anxiety, as she would not have great anxiety with co-workers and supervisors given her familiarity with them and the controlled environment. The occasional interaction with co-workers and supervisors would allow her to avoid being particularly agitated as well.

R. 649. The ALJ further stated:

> The residual functional capacity accommodates her difficulty with the public with a prohibition on such interactions. The record does not indicate she would have great difficulty with people she was familiar with, and in fact indicates that she likes some social interaction, as she indicates in December 2017 of having anxiety when being alone. The limitation to occasional interactions with co-workers and supervisors further accommodates her social anxiety.

R. 663. This explanation is sufficient. The evidence shows that Nicole has a moderate limitation in interacting with others, defined as a fair ability to function independently, appropriately, and effectively, on a sustained basis, in the area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2). Given her moderate limitation, the ALJ limited her to no interaction with the general public and occasional interaction with coworkers and supervisors. It is clear to a reviewing court how and why the ALJ arrived at the RFC limitation. Therefore, Nicole's objections that the ALJ did not adequately consider her mental impairments and failed to explain how the limitations in the RFC accommodate her moderate impairment in interacting with others is **OVERRULED**.

## C. Physical RFC and Function by Function Analysis

The magistrate judge found that the ALJ decision contained the narrative discussion required by SSR 96-8p and contained sufficient information to allow for meaningful review. Nicole objects that the ALJ did not build an "accurate and logical bridge" from the evidence to her conclusion, citing in support Monroe, 826 F.3d at 189. In Monroe, the Fourth Circuit Court of Appeals remanded a case in part because the ALJ did not include a narrative discussion describing how evidence supported the decision to give "little weight" to a consultative psychologist's opinion. The ALJ stated only that "the objective evidence of the claimant's treatment history did not support the consultative examiner's findings," but did not specify the objective evidence or the aspects of the treatment history to which he was referring. Id. at 191. "The ALJ cited evidence that he appeared to believe tended to discredit Monroe's testimony regarding his claimed episodes of loss of consciousness and fatigue. However, he failed to 'build an accurate and logical bridge from the evidence to his conclusion' that Monroe's testimony was not credible." Id. at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

In this case, the ALJ discussed Nicole's complaints of neck, back, and foot pain, and the medical records related to her complaints. No doctor recommended surgery and records did not show extremity weakness. Early medical records indicated some drug-seeking behavior by Nicole and a provider stopped opioids for her in 2017 after she tested negative for using them. The ALJ concluded that the record did not indicate that Nicole was particularly limited in standing and walking and that a limitation to light work accommodated her impairments. R. 666.

Nicole argues that the ALJ failed to discuss whether her impairments would cause her to experience episodes of pain necessitating breaks and if so, how often the breaks would occur. However, Nicole cites to nothing in the record on which the ALJ could base a finding that pain causes her to need breaks outside of those normally provided by an employer. Without describing the evidence, there is no basis for finding the ALJ erred. See Batchelor v. Colvin, 962 F.Supp.2d 864, 867 (E.D.N.C. 2013) (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)) (noting that the burden of proof is on the plaintiff for the first four steps of the sequential evaluation, including at Step 4, which relies on the RFC finding). The ALJ discussed the evidence that she relied on in determining Nicole's RFC and the court is not left to guess about how she arrived at her conclusions. Accordingly, the court **OVERRULES** this objection.

Nicole further objects that the magistrate judge erred in concluding that the ALJ directly addressed her tachycardia symptoms in her findings. The ALJ noted that Nicole testified that she had tachycardic episodes two or three times per week and was started on medication for the condition in October 2012. A provider did not think her episodes were caused by tachycardia in an emergency room visit in November 2013, but she had an apparent tachycardic episode in March 2015. R. 666. The ALJ further found that the record did not generally indicate tachycardia otherwise and did not show frequent episodes that would significantly disrupt work. The limitation to light work with the added prohibition on exposure to hazardous machinery and unprotected heights accommodated her problems with tachycardia. R. 666-667.

Nicole argues that the ALJ failed to make specific findings regarding how often she would experience frequent symptoms from tachycardia and that even occasional interruptions would preclude work activity. However, the ALJ discussed the episodes of tachycardia documented in the record and Nicole has not described evidence that the ALJ failed to discuss. Without doing so, she cannot show that the ALJ erred on this issue and her objection is **OVERRULED**.

### D. Subjective Allegations

Nicole's sixth and seventh allegations are analyzed together. Nicole objects to the magistrate judge's finding that the ALJ properly considered Nicole's subjective complaints of pain and that Nicole did not identify any subjective complaints the ALJ failed to consider. The regulations that were in effect at the time Nicole filed her first claim provided the following discussion of how the Social Security Administration analyzes subjective allegations of symptoms:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work . . . . We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence

(including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you . . . . We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work . . . .

20 C.F.R. § 416.929 (2011).

The ALJ noted that Nicole complained of neck pain, but although there was evidence of cervical degeneration, she did not experience upper extremity weakness and surgery was not recommended. R. 666. Treating records showed the neck pain was treated with a muscle relaxant and short-term pain medication, physical therapy, and a steroid injection. On examination she had some tenderness in the neck and trapezius with full strength in her upper extremities. She also had a positive Phalen's sign. An MRI showed mild to moderate narrowing of the disc space at C2/3 and moderate narrowing of the disc space with a small annular tear at C4/5. R. 657-658.

The ALJ further observed that Nicole also complained of back pain, but she had no lower extremity weakness and surgery was not recommended. Nicole did not indicate she had great exertional or postural limitations. In 2016, Nicole indicated her pain level at its worst was at 6 or 7 on a scale of 10, which indicated moderate pain. She met with a pain management specialist who observed spinal tenderness and a limited lumbar range of motion. She had positive straight leg raises, positive facet loading, and positive Patrick/Faber testing. She was

prescribed hydrocodone. R. 659. The ALJ determined that the record did not indicate intense pain that would cause her to need to lie down or cause much off-task time. R. 666.

The ALJ further stated that Nicole complained of foot pain and had resigned from a fast-food job because of foot pain. She was assessed as having an under-corrected clubfoot and early arthritis. In 2016 she had an antalgic gait, but providers did not generally note gait abnormalities and Nicole did not generally complain about foot pain after 2016. The ALJ stated that the record did not indicate that she was limited by foot pain and the light exertional level accommodated her foot pain. Id.

The magistrate judge found that the ALJ properly considered Nicole's allegations of pain. He also found that Nicole did not identify any subjective complaints the ALJ failed to consider or specific instances where the ALJ improperly applied the legal standards. Nicole objects that the ALJ erred because she failed to consider the frequency with which Nicole experiences pain and how often it would interfere with work-related activities. However, Nicole pointed to nothing in the evidence to support her allegation that she experiences pain so frequently that it is disabling and described no evidence that the ALJ failed to consider.

It is the duty of the ALJ to weigh the evidence in the record. Nicole argues that the ALJ relied on the fact that Nicole does some caretaking of children without acknowledging that the activity was intermittent and done at her discretion with assistance from others. However, in addition to considering the testimony from Nicole about her limitations, the ALJ also considered the fact that surgery was never recommended for her neck, back, or foot, there was equivocal objective evidence to support her allegations of disabling pain, and that she was treated conservatively. Nicole has pointed to nothing in the record that the ALJ failed to

consider and points to no specific error in her analysis. Without doing so, she cannot prevail on her objection to the magistrate judge's conclusion.

The court agrees with the magistrate judge that the ALJ adequately considered Nicole's subjective complaints and adequately explained her reasons for not finding that Nicole's subjective complaints were supported by the record. Accordingly, Nicole's objection to this finding is **OVERRULED**.

## VI. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: $09/12/2021$

Michael F. Urbanski
Chief United States District Judge